# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

CARLTON BROWN,                           :
                                         :
      Plaintiff,                    :     Civil Action No.:     22-3209 (RC)
                                         :
      v.                            :     Re Document No.:     17
                                         :
DENIS R. MCDONOUGH                       :
Secretary of Veterans Affairs,           :
                                         :
      Defendant.                    :

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART DEFENDANT'S PARTIAL MOTION TO DISMISS

## I.  INTRODUCTION

Plaintiff Carlton Brown sues Denis R. McDonough, in his official capacity as Secretary of the Department of Veterans Affairs (the "Secretary"), under the Rehabilitation Act and Title VII of the Civil Rights Act of 1964.  The Secretary moves to dismiss Brown's case under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  For the reasons set forth below, the Court grants in part and denies in part the Secretary's motion to dismiss.

## II.  FACTUAL BACKGROUND

During the events leading to this case, Plaintiff Carlton Brown worked as a Labor Management Relations Specialist for the Department of Veterans Affairs (the "VA").  *See* Amended Compl. ¶¶ 1, 7, 11, 29.  Brown alleges that he is a black man and that he suffers from anxiety and hypertension, conditions that he asserts substantially limit one or more of his major life activities and constitute a disability.  *Id.* ¶¶ 12, 20.  Brown's complaint alleges several incidents that Brown broadly contends violated his rights under both the Rehabilitation Act, 29 U.S.C. §§ 701 *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*

*See generally* Amended Compl. ¶¶ 7–32.  As alleged by Brown in his complaint, the incidents are summarized as follows.

Brown applied for a Labor Specialist position and although he was "ranked number one" out of all the interviewees for the position, "the position was given to someone outside of [his] protected class."  *See id.* ¶ 15, 17.  The VA denied Brown a pay raise because of protected characteristics like his race, sex, color, and disability status and as a reprisal for protected activity.  *Id.* ¶ 20.  Brown's telework agreement, which permitted him to work remotely, was also revoked—ostensibly because of his race and as retaliation for filing an EEOC charge.  *Id.* ¶¶ 21–23.  Brown was later denied the opportunity to interview for a Human Resources ("HR") Specialist position.  *Id.* ¶ 25.  Brown was also denied a reasonable accommodation for his disability.  *Id.* ¶ 26.  Brown "was subjected to a fact-finding-intended to intimidate and harass him" because of his protected characteristics and as a reprisal.  *Id.* ¶ 28.  Finally, Brown was transferred from a position at a VA facility in Texas to a VA facility in Arkansas, presumably as retaliation for protected activity.[1]  *Id.* ¶ 29.

After filing an EEOC complaint and receiving a right to sue letter, Brown filed suit in this Court.  *Id.* ¶ 32.  Before the Court is the Secretary's motion to dismiss, ECF No. 17, and memorandum in support thereof ("Mot."), ECF No. 17-1.  Brown has filed a memorandum in opposition to the Secretary's motion ("Opp."), ECF No. 19, and the Secretary has filed a reply, ECF No. 20.

---

[1]  All the events alleged in the complaint appear to have taken place in either Texas or Arkansas.  The Court observes that Title VII has its own specific venue provision, 42 U.S.C. § 2000e-5(f)(3), that neither Brown's complaint nor the Secretary's motion addresses, but it is possible that venue is not appropriate in this Court.

### III.  LEGAL STANDARD

To survive a motion to dismiss, a plaintiff must provide "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), that "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007) (internal quotation marks and citation omitted).  A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a complaint" by asking whether the plaintiff has properly stated a claim for which relief can be granted.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  In considering such a motion, the complaint must be construed "liberally in the plaintiff's favor with the benefit of all reasonable inferences derived from the facts alleged."  *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)); *DC2NY, Inc. v. Acad. Express, LLC*, 485 F. Supp. 3d 113, 118 (D.D.C. 2020) (court must "draw all reasonable inferences" in favor of the plaintiff).

Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, *Twombly*, 550 U.S. at 555, "a complaint must contain sufficient factual matter, [if] accepted as true, to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a motion to dismiss.  *Id.*  Similarly, there is no obligation to accept a plaintiff's legal conclusions as true, nor to presume the truth of legal conclusions that are couched as factual allegations.  *See Twombly*, 550 U.S. at 555.

In an employment discrimination suit, a "plaintiff is not required to plead every fact necessary to establish a *prima facie* case to survive a motion to dismiss."  *Jones v. Air Line Pilots Ass'n, Int'l*, 642 F.3d 1100, 1104 (D.C. Cir. 2011) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S.

506, 511 (2002)).  "[W]hen an employment discrimination complaint contains fulsome factual context for the challenged adverse employment action, those allegations must be considered collectively in evaluating the reasonableness and plausibility of the inferences urged by the plaintiff." *Townsend v. United States*, 236 F. Supp. 3d 280, 298 (D.D.C. 2017).  Nevertheless, the complaint "must be enough to raise a right to relief above the speculative level" even if "recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555–56 (internal quotation marks and citation omitted).

When evaluating a motion to dismiss an employment discrimination claim, "the guiding lodestar is whether, assuming the truth of the factual allegations, the inferences of discrimination drawn by the plaintiff . . . are reasonable and plausibly supported." *Lawson v. Sessions*, 271 F. Supp. 3d 119, 134 (D.D.C. 2017) (cleaned up); *see also Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (noting that the court "need not, however 'accept inferences drawn by [a] plaintiff[ ] if such inferences are unsupported by the facts set out in the complaint.'" (quoting *Kowal*, 16 F.3d at 1276)).  In ruling on a motion to dismiss, the Court "may consider only the facts alleged in the complaint, [and] any documents either attached to or incorporated in the complaint." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

## IV.  ANALYSIS

The Secretary moves to dismiss some, but not all, of Brown's claims.  *See* Mot. at 1, 11.[2] For the sake of analytical organization, the Court addresses each of the claims that the Secretary challenges based on the statute supporting that claim.  The Court begins with the claims under the Rehabilitation Act.

---

[2] The Secretary does not move to dismiss Brown's claims that are based on Brown's transfer from a Texas VA facility to an Arkansas VA facility or the denial of Brown's quality step increase.  *See* Mot. at 1, 11.

### A. Rehabilitation Act

Count I of Brown's complaint—titled "Violations of the Rehabilitation Act of 1973"—alleges that the VA "knew of Mr. Brown's condition and discriminated against him and failed to sufficiently accommodate him by delaying and denying his reasonable accommodation requests."  Amended Compl. ¶ 36.  Brown also generally alleges that the VA discriminated against him "based on his disability."  *Id.* ¶ 37.

The Rehabilitation Act, 29 U.S.C. § 791 *et seq.*, "governs employee claims of [disability] discrimination against the Federal Government."  *Ward v. McDonald*, 762 F.3d 24, 28 (D.C. Cir. 2014) (citation and internal quotations omitted).  It provides generally that "[n]o otherwise qualified individual with a disability" may be discriminated against by a federal employer "solely by reason of her or his disability."  29 U.S.C. § 794(a).  "Because of the similarities between the Rehabilitation Act and the [Americans with Disabilities Act ("ADA")], cases interpreting either are applicable or interchangeable."  *Alston v. Wash. Metro. Area Transit Auth.*, 571 F. Supp. 2d 77, 81 (D.D.C. 2008) (citation and internal quotations omitted).  The Rehabilitation Act also contemplates that the ADA will serve as a framework for assessing Rehabilitation Act violations.  *See* 29 U.S.C. § 794(d) (stating that "[t]he standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied" under the ADA).  The primary difference in analysis between the Rehabilitation Act and the ADA is that the Rehabilitation Act's causation requirement is stricter than the ADA's because, under the Rehabilitation Act, discrimination must have occurred solely because of the individual's disability.  *See Wheeler v. Am. Univ.*, 619 F. Supp. 3d 1, 18 (D.D.C. 2022) ("The ADA and Rehabilitation Act are 'virtually identical,' although the ADA's causation standard 'is slightly less strict than the Rehabilitation

Act's standard because [the ADA] does not require that the discrimination be 'solely' because of' an individual's disability." (citation omitted));  *Drasek v. Burwell*, 121 F. Supp. 3d 143, 154 (D.D.C. 2015) (Jackson, J.) ("[T]he plain language of the Rehabilitation Act imposes a stricter causation standard than the ADA.").

The Rehabilitation Act thus makes it unlawful to "discriminate against a qualified individual on the basis of disability in regard to . . . the . . . advancement[ ] or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); 29 U.S.C. § 794(d).  Discrimination includes "not making reasonable accommodations to the known physical . . . limitations of an otherwise qualified individual with a disability who is an . . . employee unless" the employer "demonstrate[s] that the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A).

### 1.  Failure to Accommodate

Brown's complaint alleges that the Secretary and the VA violated the Rehabilitation Act by denying him a reasonable accommodation for his disability.  *See* Amended Compl. ¶ 36.  To state a reasonable-accommodation claim, Brown must plausibly allege that "(1) []he was a qualified individual with a disability, (2) [his employer] had notice of h[is] disability[,] and (3) [his employer] denied h[is] request for a reasonable accommodation." *Ward*, 762 F.3d at 31.  An employee plaintiff must also specify what reasonable accommodation he sought from his employer.  *See Flemmings v. Howard Univ.*, 198 F.3d 857, 861 (D.C. Cir. 1999); *see also LaRochelle v. Lynott*, No. 22-CV-0115, 2023 WL 6215365, at *8 (D.D.C. Sept. 25, 2023) (granting motion to dismiss Rehabilitation Act accommodation claim because the plaintiff

"ma[de] no allegations identifying or describing a particular accommodation request, or explaining how a requested accommodation would have assisted" plaintiff to work).

The Secretary argues that Brown has failed to state a claim for relief because Brown's complaint does not describe "what the requested accommodation was, how it addressed his disability, whether and how it was reasonable or feasible, or any other details other than the conclusory statement[s]" alleging that his request was denied. Mot. at 6. The Court agrees.

Nowhere in Brown's complaint does Brown explain what accommodation he sought or describe why that accommodation was reasonable. *See generally* Amended Compl. Brown's opposition brief does not contend otherwise; rather, Brown argues that his complaint did not need to contain detailed factual allegations. *See* Opp. at 7. While it is true that a complaint need not contain detailed factual allegations, "a complaint must contain sufficient factual matter, [if] accepted as true, to state a claim to relief that is plausible on its face," *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted). As explained above, to state a claim for failure to accommodate, a plaintiff must explain what accommodation he sought and why it was reasonable. *See LaRochelle*, 2023 WL 6215365, at *8. Because Brown has failed to do so, his complaint does not contain sufficient factual matter "to state a claim to relief that is plausible on its face" with respect to his accommodation claim. *See Iqbal*, 556 U.S. at 678; *Farrar v. Wilkie*, No. 18-CV-1585, 2019 WL 3037869, at *2 (D.D.C. July 11, 2019) (explaining that "a plaintiff with a reasonable-accommodation claim cannot succeed without alleging 'what accommodations he needs, were requested, and were denied'" and granting motion to dismiss because plaintiff failed to do so); *see also Sindram v. Merriwether*, 506 F. Supp. 2d 7, 12 n.8 (D.D.C. 2007) ("All the plaintiff does is make vague assertions of the need for accommodations without specifying what accommodations he needs, were requested, and were denied. And, this is insufficient to

allege an ADA violation.").  Accordingly, the Court grants the Secretary's motion to dismiss Brown's failure to accommodate claim.

### 2.  Disability Discrimination

Although the counts in Brown's complaint are somewhat muddled, it appears that Brown may also attempt to allege in Count I, a disability discrimination claim based on conduct other than the VA's failure to accommodate.  *See* Amended Compl. ¶ 36–37 ("Defendants willfully, maliciously, intentionally, and or with reckless disregard, discriminated against [] Brown in this instance solely based on his disability.").  To the extent Brown's complaint attempts to allege a disability discrimination claim, that claim also fails because Brown's allegations cannot support causation.

To state a claim for disability discrimination, a plaintiff must plausibly allege that he was discriminated against on account of his disability.  *See Keith v. U.S. Gov't Accountability Off.*, No. 21-CV-2010, 2022 WL 3715776, at *2 (D.D.C. Aug. 29, 2022).  A plaintiff cannot survive a motion to dismiss merely by providing "threadbare" or conclusory allegations of discrimination; nor can a plaintiff state a claim "merely [by] invok[ing] [disability], in the course of a claim's narrative."  *See Doe #1 v. Am. Fed'n of Gov't Emps.*, 554 F. Supp. 3d 75, 102 (D.D.C. 2021) (internal quotation marks and citation omitted).  Rather, a "plaintiff must allege some facts" to give rise to the reasonable inference that his disability "was the reason for defendant's actions." *See id.* (internal quotation marks and citation omitted); *Massaquoi v. District of Columbia*, 81 F. Supp. 3d 44, 50 (D.D.C. 2015) ("[P]laintiff's conclusory allegations of discrimination, without any supporting facts, 'stop short of the line between possibility and plausibility of entitlement to relief.'" (citation omitted)).

Here, Brown states that "Defendants willfully, maliciously, intentionally, and or with reckless disregard, discriminated against [] Brown in this instance solely based on his disability." Amended Compl. ¶ 37. But Brown provides no allegation beyond that conclusory assertion to show causation. Although Brown uses comparator evidence in Count II to support his Title VII claim, addressed below, he makes no such use of comparator evidence in Count I to support his disability discrimination claim. *Compare id.* ¶ 37 (alleging disability discrimination without providing a factual basis), with *id.* ¶ 41 (stating in context of Title VII discrimination claim that "Defendant instead hired individuals outside of Plaintiff's protected classes for the position."). While the factual section of Brown's complaint does state that "[] Brown was not selected [for the Labor Specialist position], and the position was given to someone outside of Brown's protected class," Amended Compl. ¶ 17, Brown does not explain what protected "class" (singular) the allegation refers to, and the Court cannot infer that it refers to Brown's alleged disability—as opposed to race or sex. Indeed, the fact that only Count II—alleging Title VII discrimination—references comparator evidence leads the Court to conclude that Brown relies on comparator evidence only to support his Title VII discrimination claims and that the class referred to in the factual section of the complaint is a class protected by Title VII, not the Rehabilitation Act.

The Court also observes that it is unclear what, if any, negative employment action Brown relies on to support a disability discrimination claim. Other than the VA's alleged failure to accommodate (discussed above), Count I mentions no negative employment action. *See* Amended Compl. ¶¶ 33–38. Without an allegation of a negative employment action, Brown cannot state a claim for disability discrimination under the Rehabilitation Act. *See* 42 U.S.C. §§ 12112(a), 12112(b)(1); *Harrington v. Pompeo*, No. 18-CV-1056, 2023 WL 2954417, at *4

(D.D.C. Apr. 14, 2023), *aff'd sub nom. Harrington v. Sec'y of State*, No. 23-5070, 2023 WL

7983869 (D.C. Cir. Nov. 15, 2023) ("[A] disability disparate treatment claim under the

Rehabilitation Act requires that the plaintiff have suffered an adverse employment action

because of her disability or perceived disability.").  Because Brown has not made any allegations

to support causation, or a negative employment action, the Court concludes that Brown cannot

state a claim of disability discrimination under the Rehabilitation Act.

3.   Rehabilitation Act Retaliation

In Count III, Brown alleges that he was retaliated against for opposing disability

discrimination, in violation of the Rehabilitation Act.  *See* Amended Compl. ¶¶ 45–46.  "To state

a claim for retaliation, [a plaintiff] must adequately plead that (1) []he engaged in activity

protected by . . . the Rehabilitation Act; (2) the employer took an adverse employment action

against h[im]; and (3) the adverse action was causally related to the exercise of h[is] rights."

*Ward-Johnson v. Glin*, No. 19-CV-00534, 2020 WL 2770018, at *9 (D.D.C. May 28, 2020)

(internal quotation marks omitted) (quoting *Holcomb v. Powell*, 433 F.3d 889, 901–02 (D.C. Cir.

2006)).  "The bar to plead retaliation is lower than it is for discrimination; [a plaintiff] must only

plausibly allege actions that 'might have dissuaded a reasonable worker from making or

supporting a charge of discrimination.'"  *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*,

548 U.S. 53, 68 (2006)).

Brown's retaliation claim under the Rehabilitation Act fails to plead sufficient facts to

state a claim.  The Court starts with whether Brown engaged in statutorily protected activity.  To

engage in protected activity, an individual must "oppose[] any act or practice made unlawful by

[the Rehabilitation Act]" or "ma[k]e a charge, testif[y], assist[], or participate[] in any manner in

an investigation, proceeding, or hearing under [the Rehabilitation Act]."  42 U.S.C. § 12203(a);

*see also* 29 U.S.C. § 794(d)).  While Brown twice filed formal complaints with the VA Office of Resolution Management for employment discrimination—activity that could be protected by the Rehabilitation Act—neither complaint referenced disability discrimination.  *See* Amended Compl. ¶¶ 21, 27, 46; Mot. to Dismiss in Part, Exhibits 2–3, ECF No. 8-2, 8-3.[3]  Rather, each complaint charges that the VA discriminated on the basis of race, sex, color, and reprisal—but does not mention disability.  *See* Mot. to Dismiss in Part, Exhibits 2–3.  Because the internal complaints do not charge the VA with disability discrimination, the complaints do not oppose a practice made unlawful by the Rehabilitation Act.  *See* 42 U.S.C. § 12112(a) (stating that it is unlawful to "discriminate against a qualified individual on the basis of disability").  While Brown also filed a Charge of Discrimination with the EEOC that presumably alleged disability discrimination, that Charge was filed after the events that Brown alleges constitute retaliation.  Amended Compl. ¶ 32.  The EEOC charge cannot form the basis for Brown's retaliation claim because "as a matter of law and logic, the subsequent event could not have caused the preceding event."  *Duberry v. Inter-Con Sec. Sys., Inc.*, 898 F. Supp. 2d 294, 299 (D.D.C. 2012).

Nevertheless, read generously, the Court can infer from the complaint that Brown also alleges that he was retaliated against for requesting an accommodation for his disability.  *See* Amended Compl. ¶¶ 20, 26, 28, 44.  "[T]he act of requesting in good faith a reasonable accommodation is a protected activity" under the Rehabilitation Act.  *Solomon v. Vilsack*, 763 F.3d 1, 15 (D.C. Cir. 2014).  Brown has therefore sufficiently alleged that he engaged in an activity protected by the Rehabilitation Act.  Brown has also sufficiently alleged that the VA

---

[3]  The Court may consider these documents because they are referenced in the plaintiff's complaint.  *See St. Francis Xavier Parochial Sch.*, 117 F.3d at 624 (The court "may consider . . . any documents either attached to or incorporated in the complaint . . . .").  This separate motion to dismiss in part was filed by Defendant earlier in these proceedings.

took an adverse employment action against him.  Specifically, Brown alleges that he was denied

a quality step increase, that his telework agreement was revoked, that he was not selected for

certain positions, that he was transferred to a different VA facility, and that he was subjected to

an intimidating fact-finding process.  *See* Amended Compl. ¶¶ 20–29.

The problem arises with causation.  "[F]or a retaliation claim to survive dismissal, a

plaintiff's complaint must contain enough factual matter, accepted as true, to establish plausibly

a causal link between protected activity and an adverse employment action."  *Omene v.*

*Accenture Fed. Servs.*, No. 18-CV-02414, 2019 WL 4750276, at *5 (D.D.C. Sept. 30, 2019)

(citing *Howard R.L. Cook & Tommy Shaw Found. ex rel. Black Emps. of Libr. of Cong., Inc. v.*

*Billington*, 737 F.3d 767, 772 (D.C. Cir. 2013)).

But Brown has not alleged any facts permitting an inference that the Secretary's adverse

employment action was causally linked to Brown's request for an accommodation.  The Court

observes that "temporal proximity can . . . support an inference of causation, but only where" the

protected activity and the adverse employment action "are very close in time."  *Hamilton v.*

*Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012) (internal quotation marks and citation omitted).

Problematically, although Brown's complaint alleges that his accommodation request was *denied*

on July 26, 2019, the complaint does not allege when he *requested* the accommodation.  *See*

Amended Compl. ¶ 26.  The Court is therefore hard-pressed to determine whether any of the

adverse employment actions were temporally proximate to Brown's request for an

accommodation.  And even if Brown's complaint is read generously, Brown has not alleged any

other facts linking the VA's adverse actions with his request for an accommodation.  *See*

*generally* Amended Compl.  Without knowing whether the Secretary's adverse employment

actions occurred shortly after Brown's accommodation request, and without any other facts to

support causation, the Court cannot infer that retaliation was the motive for the VA's adverse

employment actions.  Accordingly, the Court concludes that Brown has failed to state a claim for

retaliation under the Rehabilitation Act based on his request for an accommodation.

*  *  *

The Court grants the Secretary's motion with respect to Brown's claims under the

Rehabilitation Act.  The Court next turns to Brown's claims under Title VII.

### B.  Title VII Discrimination

Count II of Brown's complaint alleges that the VA violated Title VII by subjecting

Brown "to adverse employment actions . . . on the basis of his race, color, gender, and national

origin."  Amended Compl. ¶ 40.  Title VII makes it "an unlawful employment practice . . . to fail

or refuse to hire or to discharge any individual, or otherwise to discriminate against any

individual with respect to his compensation, terms, conditions, or privileges of employment,

because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-

2(a)(1).[4]  When a protected characteristic is at issue, Title VII's anti-discrimination provision is

"capacious" and "[o]nce it has been established that an employer has discriminated against an

employee with respect to that employee's 'terms, conditions, or privileges of employment'

because of a protected characteristic, the analysis is complete."  *Chambers v. District of

Columbia*, 35 F.4th 870, 874–75 (D.C. Cir. 2022).  Examples of actions that meet this test

include transferring an employee to a new position, firing an employee, decreasing pay, or any

other number of activities.  *See id.*  Brown asserts that several adverse employment actions

constituted discrimination under Title VII.  *See generally* Amended Compl. ¶¶ 39–51.  The

---

[4]  Title VII does not prohibit discrimination based on disability.  *See Thomas v. District of Columbia*, No. 22-CV-1269, 2023 WL 2610512, at *3 (D.D.C. Mar. 23, 2023) (dismissing Title VII claim based on disability discrimination).

Secretary asserts that Brown fails to state a claim for several of these claims.  *See* Mot. at 5–10. The Court addresses each of the claims at issue in turn.

### 1.  First Instance of Non-Selection

The Secretary argues that Brown has failed to state a claim respecting Brown's allegation that the VA discriminated against him by not selecting him for a Labor Specialist position.  *See* Mot. at 5; Reply at 1-2.  Specifically, the Secretary argues that Brown's complaint fails to state a claim because Brown has not alleged facts showing that Brown was significantly superior to the candidate selected for the Labor Specialist position.  *See* Mot. at 5.  The Court disagrees for two reasons.

First, the facts that the Secretary argues Brown failed to allege are only required in the summary judgment context—not the motion to dismiss context.  *See* Mot. at 5 (arguing that Plaintiff did not allege that "a reasonable employer would have found the plaintiff *significantly* better qualified for the job" and citing Title VII summary judgment case (internal quotation marks and citations omitted) (emphasis in original)).  Although courts in this district have held that "[*s*]*ummary judgment* is properly granted if [p]laintiff cannot provide enough evidence to show that he presents 'stark superiority' over the selectee," *Perry v. Wilkie*, No. 17-CV-2021, 2020 WL 1853276, at *8 (D.D.C. Apr. 12, 2020) (emphasis added and citation omitted), at the motion to dismiss stage a plaintiff need not plead that he was superior to other candidates, he must only plead sufficient facts to raise a "reasonable inference" of discrimination, *Keith*, 2022 WL 3715776, at *3; *Poland v. D.C. Water & Sewer Auth.*, No. 16-CV-2031, 2022 WL 2452609, at *4 (D.D.C. July 6, 2022) ("[W]hen evaluating whether a plaintiff has sufficiently pled facts that support an inference of discrimination at the motion to dismiss stage, there is a *very low bar*

for alleging an inference of discrimination." (internal quotation marks and citation omitted)
(emphasis added)).

Second, even if pleading significant superiority were required at the motion to dismiss
stage, Brown has done so.  As explained above, "[w]hen evaluating a Rule 12(b)(6) motion to
dismiss, the court must construe the complaint in [the] light most favorable to the plaintiff and
must accept as true all reasonable factual inferences drawn from well-pleaded factual
allegations." *Mann v. United States*, No. 20-CV-1337, 2022 WL 888181, at *2 (D.D.C. Mar. 24,
2022).  Here, the complaint alleges that Brown "was ranked number one (1) amongst all the
interviewees" for the Labor Specialist position but that the position was given to another
employee "outside of Brown's protected class."  Amended Compl. ¶ 15, 17  Given that Brown
alleges he was ranked first out of all the interviewees for the Labor Specialist role—and read in
the light most favorable to Brown—the Court can infer from the facts in the complaint that
Brown was significantly better qualified than the other applicants for the position.  *See also Aka
v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1294 (D.C. Cir. 1998) (en banc) ("If a factfinder can
conclude that a reasonable employer would have found the plaintiff to be significantly better
qualified for the job, but this employer did not, the factfinder can legitimately infer that the
employer consciously selected a less-qualified candidate—something that employers do not
usually do, unless some other strong consideration, such as discrimination, enters into the
picture.")

The Secretary makes no other arguments with respect to the VA's decision not to select
Brown for the Labor Specialist position.  *See generally* Mot. at 5; Reply at 1–2.  And, "[on] a
12(b)(6) motion, *it is the defendant who bears the burden of proof*."  *Plevnik v. Sullivan*, No. 23-
CV-837, 2023 WL 7279229, at *2 (D.D.C. Nov. 3, 2023) (emphasis added); *see Willis v. Gray*,

No. 14-CV-1746, 2020 WL 805659, at *4 (D.D.C. Feb. 18, 2020) ("Rule 12(b)(6) 'places th[e]

burden on the moving party' to show that the complaint is legally insufficient." (quoting *Cohen

v. Bd. of Trs. of the Univ. of the Dist. of Columbia*, 819 F.3d 476, 481 (D.C. Cir. 2016))).  The

Secretary has not met his burden.

      The Court briefly notes, however, that Brown has plausibly stated a claim for

discrimination under Title VII based on the first instance of non-selection.  The first question in

the employment discrimination analysis is whether Brown suffered an adverse employment

action.  *See Chambers*, 35 F.4th at 874.  Here, the decision not to hire Brown constitutes an

adverse employment action under Title VII.  *See id*.  The second question in the analysis is

whether the VA took the adverse employment action because of Brown's protected

characteristic.  *Id.*  Brown "can raise an inference of discrimination by showing 'that []he was

treated differently from similarly situated employees who are not part of the protected class.'"

*Brown v. Sessoms*, 774 F.3d 1016, 1022 (D.C. Cir. 2014) (citation omitted).

      Here, Brown alleged that the VA decided not to hire him despite being ranked number

one out of all the interviewees for the Labor Specialist position.  *See* Amended Compl. ¶ 17.

That allegation allows the Court to infer that Brown was similarly—or better—situated for the

Labor Specialist position than the individual who obtained the position and who can serve as a

comparator.  *See Sledge v. District of Columbia*, 63 F. Supp. 3d 1, 17 (D.D.C. 2014) ("It is well

established that, to be successful in the use of comparator evidence, 'the plaintiff must point to a

*similarly situated* employee outside of a protected class[.]'" (emphasis in original) (citation

omitted)).  And Brown alleges that the individual selected for the position in his stead was not a

member of his protected class (whichever protected class—race, color, or sex—that might be).

*See id.*; Amended Compl. ¶ 17.  These allegations are sufficient to permit an inference of

discrimination.  Accordingly, the Court holds that Brown can state a claim for discrimination

under Title VII based on his non-selection for the Labor Specialist role and denies the

Secretary's motion in this respect.

2.  Second Instance of Non-Selection

Although Count II of Brown's complaint does not explicitly reference Brown's non-

selection for the HR Specialist role, the Court infers that his non-selection for that role implicitly

undergirds his allegation that the VA violated Title VII.  With respect to Brown's second non-

selection, the Secretary argues that Brown has not stated a claim because Brown has not alleged

that he was eligible for the HR Specialist position or that the individual selected for that position

was outside of Brown's protected class.  *See* Mot. at 5–6.  Brown does not contend otherwise.

*See* Opp. at 5–6.

As explained above, to state a claim for Title VII employment discrimination a plaintiff

must allege that the adverse employment action taken against him was taken on account of his

protected class.  *See Chambers*, 35 F.4th at 874.  "Though the initial burden of pleading the

'because of' element is not onerous, a plaintiff cannot survive a motion to dismiss merely by

providing threadbare or conclusory allegations of discrimination; nor can a plaintiff state a claim

merely by invoking h[is] race, sex, age, or disability, in the course of a claim's narrative."  *Keith*,

2022 WL 3715776, at *3 (cleaned up).  While Brown alleges that the individual hired for the

Labor Specialist position was a person outside of his class, he does not make the same allegation

with respect to the HR Specialist position.  *See* Amended Compl. ¶ 25.  Because Brown has not

alleged any facts that could support causation with respect to the VA's decision not to interview

or hire him for the HR Specialist position, Brown has not stated a claim to relief under Title VII

with respect to his non-selection for that position.  Accordingly, the Court grants the Secretary's motion in this respect.

### 3.   Denial of Telework

Although Brown's opposition memorandum states that the termination of his telework is part of a "pattern of discriminat[ion]," he fails to indicate whether the denial of telework is a standalone claim, Opp. at 8, and his complaint does not make the issue clearer, *see* Amended Compl. ¶¶ 22–23, 41–42.  Nevertheless, the Court will assume that Brown intended to plead a standalone claim of discrimination based on the revocation of his telework agreement.  For his part, the Secretary argues that the denial of telework does not constitute an adverse employment action and, in doing so, attempts to distinguish the D.C. Circuit's recent opinion in *Chambers*. *See* Mot. at 6–9.

The Court disagrees with the Secretary's analysis.  As other courts in this District have concluded, the revocation of a telework agreement can constitute an adverse employment action under Title VII.  *See, e.g., Black v. Guzman*, No. 22-CV-1873, 2023 WL 3055427, at *8 (D.D.C. Apr. 24, 2023) (holding that the suspension of telework benefits changed the plaintiff's "terms" of employment under *Chambers*).  Ultimately, however, the Court concludes, that Brown has failed to raise an inference of causation for this claim.  While Brown alleges that the VA "terminated 18 employees' telework agreements, whose races consisted of 17 black/Hispanic and 1 unknown," Amended Compl. ¶ 23, Brown alleges no facts supporting an inference that Brown's protected characteristics were the cause of the revocation.  Although, Brown alleges that the adverse employment conduct was carried out against black and Hispanic employees, he makes no allegation that employees outside of this protected class were treated differently.  And there are no other allegations in the complaint to support causation.  Accordingly, the Court

grants the Secretary's motion with respect to Brown's claim based on the revocation of his telework agreement.

### 4.  Title VII Retaliation

Count III of Brown's complaint alleges that the VA retaliated against Brown, based on Brown's protected conduct, in violation of Title VII.  *See id.* ¶¶ 45–47.  The Court infers from Brown's complaint that Brown bases his retaliation claims on the allegations that his telework agreement was revoked, that he was denied the opportunity to interview for an HR specialist role, and that he was subjected to a fact-finding intended to harass him.  *See* Amended Comp. ¶¶ 20–28, 44, 46.

"Title VII bars federal agencies from retaliating against an employee because he has opposed 'a practice made an unlawful employment practice' by the statute" or "that the employee reasonably and in good faith *believed* was unlawful under the statute."  *McGrath v. Clinton*, 666 F.3d 1377, 1380 (D.C. Cir. 2012) (emphasis in original) (citing 42 U.S.C. § 2000e–3(a)).  The antiretaliation provision sweeps broadly and prohibits retaliatory actions that extend outside the workplace and "do not affect the terms, conditions, or privileges of employment." *Chambers*, 35 F.4th at 876.  Still, the antiretaliation provision is intended to prevent "employer interference with unfettered access to Title VII's remedial mechanisms" and so only applies to "employer actions that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers."  *Id.* at 877 (quoting *Burlington*, 548 U.S. at 68).  "'Not every complaint entitles its author to protection from retaliation under Title VII . . . because the plaintiff must demonstrate that [he] complained to the employer of some unlawful discrimination based on [his] membership in a protected class.'"  *Keith*, 2022 WL 3715776, at *5 (quoting

*Belov v. World Wildlife Fund, Inc.*, No. 21-CV-1529, 2021 WL 4773236, at *5 (D.D.C. Oct. 13, 2021)).

The elements of a retaliation claim under Title VII are "(1) that [the plaintiff] opposed a practice made unlawful by Title VII; (2) that the employer took a materially adverse action against him; and (3) that the employer took the action 'because' the employee opposed the practice." *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015) (citation omitted); *see* 42 U.S.C. § 2000e–3(a). Brown has sufficiently alleged the first element by stating that he filed internal complaints with the Department of Veterans Affairs Office of Resolution Management, reporting that the VA discriminated against him in violation of Title VII. *See* Amended Compl. ¶¶ 21, 27, 46–47; *see also* Mot. to Dismiss in Part, Exhibits 2–3.

Brown has also alleged facts showing that the VA took a materially adverse action against him. *See* Amended Compl. ¶¶ 22, 25, 28. As explained above, the revocation of a telework agreement can constitute an adverse employment action under Title VII. *See, e.g.,* *Black*, 2023 WL 3055427, at *8. And Brown's non-selection for the HR specialist role could also constitute an adverse employment action. *See Chambers*, 35 F.4th at 874 (explaining that refusing to hire constitutes adverse employment action).

What remains, then, is whether Brown has sufficiently alleged causation. One way that a "plaintiff can establish the causation element of the prima facie case [is] by showing a tight temporal proximity between protected activity and an adverse employment action. However, only where the two events are very close in time does temporal proximity support an inference of causation." *Iyoha v. Architect of the Capitol*, 927 F.3d 561, 574 (D.C. Cir. 2019) (internal quotation marks and citation omitted). Although some courts in this District have interpreted "very close in time" to mean that the adverse employment action must have occurred no more

than three months where proximity, "standing alone," is used to infer causation, *BEG Invs., LLC v. Alberti*, 144 F. Supp. 3d 16, 22 (D.D.C. 2015); *see also Williams v. Spencer*, 883 F. Supp. 2d. 165, 178 (D.D.C. 2012) (collecting cases), the D.C. Circuit has not "established a bright-line . . . rule," *Hamilton*, 666 F.3d at 1357–58.  The D.C. Circuit has noted, however, that periods over three months "may, standing alone, be too lengthy to raise an inference of causation."  *Id.*  Conversely, the D.C. Circuit has found that periods of less than three months, even standing alone, can be sufficient to raise an inference of causation.  *Id.* (finding causation where adverse employment action occurred two months after protected activity); *BEG Invs.*, 144 F. Supp. 3d at 22 ("This Circuit has held on several occasions that a period of one month or shorter typically suffices to state a prima facie claim and raise a plausible inference of retaliation." (citations omitted)).

Here, Brown alleges that adverse employment actions were taken against him less than a month after his protected activity.  Brown's internal VA complaints were filed on June 12, 2019, and July 30, 2019.  Amended Compl. ¶¶ 21, 27.  His non-selection for the HR Specialist role occurred within one month of his first complaint (on June 20, 2019) and the revocation of his telework agreement occurred on the very same day (June 12, 2019) that Brown filed his first internal complaint.  *See* Amended Compl. ¶¶ 21, 22, 25, 46.  Although the connection between these events is not clear, at the motion to dismiss stage, the Court must read the complaint and draw all inferences therefrom in Brown's favor.  *See Stewart*, 471 F.3d at 173.  Given the temporal proximity—of less than one month—between Brown filing internal complaints of discrimination and the alleged adverse employment actions, the Court concludes that Brown has sufficiently raised an inference of causation for the alleged retaliatory conduct.  *See BEG Invs.*, 144 F. Supp. 3d at 23 ("[T]his Court has held that where a plaintiff alleges that an adverse action

took place 'only a month after' he engaged in protected activity, the 'timing is suspicious enough for the court to infer,' and for the plaintiff to have plausibly alleged, causation." (citation omitted)).  Accordingly, the Court denies the Secretary's motion with respect to Brown's Title VII retaliation claim.

### 5. Hostile Work Environment

Count IV of Brown's complaint alleges that the VA created a "hostile and abusing working environment" because of his protected characteristics and as retaliation, in violation of Title VII.  Amended Compl. ¶¶ 49, 50; Opp. at 9–10.  The Secretary argues that Brown has failed to state a claim for hostile work environment because Brown's allegations do not allow an inference that the treatment he faced was "severe or pervasive" or that harassment permeated the workplace.  Mot. at 10; Reply at 4–5.

Title VII prohibits employers from creating a hostile work environment that alters the terms or conditions of employment.  *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 752 (1998) ("Title VII is violated by either explicit or constructive alterations in the terms or conditions of employment . . . .").  To succeed on a hostile work environment claim, a plaintiff must show that his employer engaged in discriminatory conduct that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.  *See Achagzai v. Broad. Bd. of Governors*, 170 F. Supp. 3d 164, 183 (D.D.C. 2016).

"A hostile environment consists of several individual acts that may not be actionable on their own but become actionable due to their cumulative effect."  *Baird v. Gotbaum*, 792 F.3d 166, 168 (D.C. Cir. 2015) (cleaned up).  That said, "[t]he constituent acts must be 'adequately linked' such that they form 'a coherent hostile environment claim.'"  *Id.*  (citation omitted).

"[I]ntermittent spats . . . involving different people doing different things in different contexts" and that "have little to do with each other," cannot form the basis for a hostile work environment claim. *Id.* at 171. In assessing whether a hostile work environment exists, "courts consider the totality of the circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Richardson v. Petasis*, 160 F. Supp. 3d 88, 126 (D.D.C. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

To begin with, the Court observes that Brown's hostile work environment claim faces an uphill battle because his "claim is essentially an amalgamation of his discrimination and retaliation claims, which courts have been reluctant to transform into a cause of action for hostile work environment." *Massaquoi*, 81 F. Supp. 3d at 53 (citation omitted and cleaned up); *Baloch v. Norton*, 517 F. Supp. 2d 345, 364 (D.D.C. 2007), *aff'd sub nom. Baloch v. Kempthorne*, 550 F.3d 1191 (D.C. Cir. 2008) ("[T]his jurisdiction frowns on plaintiffs who attempt to bootstrap their alleged discrete acts of retaliation into a broader hostile work environment claim."). The complaint in this case does not make clear what precise conduct Brown relies on for his hostile work environment claim, but it appears that Brown generally points to many of the same actions that underlie his Title VII discrimination and retaliation claims. *See generally* Amended Compl. ¶¶ 49–51.

The VA's actions that could create a hostile work environment are (1) Brown's non-selection (2) the denial of a quality step pay increase, (3) the revocation of Brown's telework agreement, (4) the denial of Brown's request for an accommodation, (5) the harassing fact-finding investigation, and (6) Brown's reassignment to a VA facility in Arkansas. *See* Amended Compl. ¶¶ 20–29. To state a claim for hostile work environment, Brown must allege that these

actions were severe or pervasive, and "linked" to each other.  *Baird*, 792 F.3d at 168–69.  But "although a plaintiff may not combine discrete acts to form a hostile work environment claim without meeting the required hostile work environment standard, neither can a court dismiss a hostile work environment claim merely because it contains discrete acts that the plaintiff claims (correctly or incorrectly) are actionable on their own."  *Baird v. Gotbaum (Baird I)*, 662 F.3d 1246, 1252 (D.C. Cir. 2011).

Accordingly, the Court considers Brown's allegations in light of "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it [wa]s physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with [Brown's] work performance."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 103 (2002).  The Court concludes that the VA's actions—considered collectively— were severe.  *See Brooks v. Grundmann*, 748 F.3d 1273, 1276 (D.C. Cir. 2014) ("In discerning severity and pervasiveness, [the Court] assesses the timeline of events as a whole.").  While Brown's complaint does not allege that he was physically threatened or humiliated, Brown does allege that the VA's actions interfered with his employment in numerous ways and that the VA's actions were both frequent and pervasive.  Amended Compl. ¶¶ 20–29.

The allegations concerning the VA's actions allow an inference that the VA's conduct was severe and interfered with Brown's work to such an extent that the allegations support a hostile work environment claim.  For instance, the VA transferred Brown from his role at the Michael E DeBakey VA Medical Center in Houston, Texas to a new role at the Central Arkansas VA Healthcare System of Arkansas in Little Rock, Arkansas, *see* Amended Compl. ¶ 29—a reassignment over 400 miles away.  The Court can infer that this reassignment interfered with Brown's ability to work and "alter[ed] the terms of [Brown's] employment."  *Montgomery v.*

*McDonough*, No. 22-CV-1715, 2023 WL 4253490, at *5 (D.D.C. June 29, 2023); *see also Czekalski v. Peters*, 475 F.3d 360, 365 (D.C. Cir. 2007) (observing that the adverse nature of a reassignment is "generally a jury question"); *see also Chambers*, 35 F.4th at 874 (explaining that transferring "an employee to a new role, unit, *or location* (as opposed to the mere formality of a change in title . . .) undoubtedly" affects an employees' terms of employment (cleaned up and emphasis added)); *id.* at  885 (Walker, J. concurring) ("[A] move to a different state is not a negligible alteration of the terms and conditions of employment . . . .").

Reassignment to a different state is also especially severe here because the VA revoked Brown's telework agreement, meaning that Brown could not work at the reassigned location remotely.  Amended Compl. ¶ 22.  Presumably, Brown cannot drive to a job 400 miles each way, thus, his new assignment requires that he relocate to Arkansas.  Beyond the interference caused by the reassignment and revocation of the telework agreement, Brown has also alleged that his disability accommodation was denied.  *Id.* ¶ 26.  To the extent that Brown required a disability accommodation to properly perform his job, the denial of that accommodation interferes with his employment.  *See Floyd v. Lee*, 85 F. Supp. 3d 482, 517 (D.D.C. 2015) ("The prolonged denial of a reasonable accommodation can underlie a hostile work environment claim when 'all the circumstances' would support such a claim." (citation omitted)).

Although somewhat less severe, the VA's other conduct also contributed to a hostile work environment.  As listed above, Brown was not selected for a Labor Specialist position, was denied a quality step pay increase, and was subjected to a harassing and intimidating fact-finding.  Amended Compl. ¶¶ 15–17, 20, 28.  While each of these actions alone may not rise to the level of a hostile work environment, the combined allegations are "'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working

environment.'"  *Harris*, 510 U.S. at 21 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).

Additionally, all of the VA's actions took place within a relatively short span of time. For instance, Brown's non-selection for the Labor Specialist role took place in either March or April of 2019, his quality step pay increase was denied in May of 2019, his telework agreement was revoked in June of 2019, his disability accommodation was denied in July of 2019, the harassing fact-finding took place in July of 2019, and Brown was reassigned to the Arkansas facility in October of 2019.  *See* Amended Compl. ¶¶ 15–18, 20, 22, 26, 28–30.  Looking at the VA's conduct, which occurred within the span of roughly seven months, with employment actions taking place on an almost monthly basis, it appears that the VA's conduct was relatively frequent.  Considered collectively, the conduct Brown was subjected to was severe and pervasive.

Moreover, although the Secretary argues that "Brown has not alleged a connected series of incidents that are 'sufficiently continuous and concerted to be considered pervasive,'" Mot. at 10 (quoting *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999)); Reply at 4–5, the Court concludes that Brown has alleged sufficient facts to adequately link the VA's actions, at least with inferences made in his favor at the motion to dismiss stage.  An "adequate[] link" connecting "constituent acts" can be shown where the acts "involve the same type of employment actions, occur relatively frequently, and [be] perpetrated by the same managers." *Baird*, 792 F.3d at 169 (internal quotation marks omitted) (quoting *Baird I*, 662 F.3d at 1251). Here, the same group of managers are alleged to have perpetrated much of the conduct that Brown argues makes up his hostile work environment claim.  For instance, Brown alleged that Charley Reed, the Acting Human Resources Officer, was responsible for denying Brown's

quality step increase, revoking Brown's telework agreement, and conducting the harassing fact-finding.  *See* Amended Compl. ¶¶ 20, 22, 28.  Similarly, Brown's complaint alleges that Michael Heath, the Acting Labor Chief and Assistant Human Resources Officer, was involved in the denial of Brown's quality step increase, the denial of Brown's accommodation request, and the harassing fact-finding.  *See id.* ¶¶ 20, 26, 28.  Additionally, Brown alleges that Robin Miller, the Employment Relations and Labor Relations Supervisor, was involved in his non-selection for the Labor Specialist role, the denial of his accommodation request, and his reassignment from Texas to Arkansas.  *See id.* ¶¶ 16, 26, 29.  And, as explained above, much of the VA's alleged conduct occurred within a relatively short period of time.  At this early stage of the proceedings, the Court can infer from these allegations that the VA's actions can be linked into a claim for hostile work environment.

The Court concludes that—taking all of Brown's allegations as true and with inferences made in his favor—Brown has alleged sufficient facts to show that the VA's actions were adequately linked, severe, and pervasive.[5]  Accordingly, the Secretary's motion is denied with respect to Brown's hostile work environment claim.

---

[5] The Secretary also briefly argues that Brown has not alleged facts showing that the denial of Brown's quality step increase was related to "any protected characteristic."  *See* Mot. at 10 (arguing in passing that Brown does not "allege that the individuals involved in the decision had any history of animus towards Brown's protected characteristics").  While this may be an attempt by the Secretary to argue that Brown has not shown that the hostile work environment was causally related to a protected characteristic, the Secretary's argument about causation is only two sentences long, addresses only one of the VA's many actions—the denial of the quality step increase—and does not discuss retaliation at all.  *Id.*  "[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are deemed waived."  *Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013).  The Court may therefore consider the Secretary's causation argument waived.

In any event, the Court has already held above—based on the same factual allegations—that Brown has sufficiently alleged a causal connection for both his non-selection claim and his retaliation claim, based on discrimination and retaliation respectively.  *See supra* Section IV.B.1, 4.  Just like with Brown's retaliation claim, the acts alleged for Brown's hostile work

## V.  CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Secretary's partial motion to dismiss (ECF No. 17).  The Court will permit Brown 30 days to amend his complaint, if he chooses to do so.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  March 29, 2024                                                    RUDOLPH CONTRERAS
                                                                                          United States District Judge

---

environment claim occurred shortly after Brown engaged in statutorily protected activity.  And, as explained with respect to Brown's first non-selection claim, Brown has alleged sufficient facts to raise an inference of discrimination based on a protected characteristic.  Because Brown's hostile work environment claim largely rests on the same facts and causation analysis, the same conclusion pertains here.